IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
*Southern Division*

GREGORIK COLLINGTON,       *

    **Plaintiff,**          *

**v.**                      **Case No.: GJH-20-966**

STATE OF MARYLAND, *et al.*,    *

    **Defendants.**       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Gregorik Collington brought this civil action against the State of Maryland, Calvert County, Sheriff Mike Evans, Deputy Harms, Officer Gains, Deputy Buck, Deputy Kelly, Deputy Wilson, Sergeant Borchesky, Detective Wells, Captain Ireland, other known and/or unknown police officers or sheriff's deputies ("John Doe officer and deputy defendants"), former State's Attorney Laura Martin, and Assistant State's Attorney Lisa Ridge, alleging several state tort claims (Counts 1, 2, 3, 5, and 6), a state constitutional claim (Count 4), and several federal constitutional claims under 42 U.S.C. § 1983 (Counts 7, 8, and 9). ECF No. 6. Pending before the Court is a Motion to Dismiss or for Summary Judgment filed by Defendants Calvert County, Evans, Harms, Buck, Kelly, Wilson, Borchesky, Wells, and Ireland ("Law Enforcement Defendants"), ECF No. 15, and a Motion to Dismiss filed by Defendants State of Maryland, Martin, and Ridge ("State Defendants"), ECF No. 22. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment, ECF No. 15, is granted, in part, and denied, in part, and State Defendants' Motion to Dismiss, ECF No. 22, is granted by concession.

## I.      BACKGROUND

### A.      Factual Background[1]

Plaintiff is an African-American male and a resident of Prince George's County, Maryland. ECF No. 6 ¶ 1. According to Plaintiff, he has been "injured and risks further harm as a result of the Defendants' illegal acts and omissions." *Id.* These illegal acts and omissions allegedly form a pattern of harassment against Plaintiff and include: "unlawful arrest, search, and detention, as well as assault, battery, false arrest, false imprisonment, malicious prosecution and malicious abuse of the criminal process[.]" *Id.* ¶ 16. Specifically, Plaintiff describes the following events:

- On January 27, 2017, Defendants re-opened and requested the court to issue a bench warrant in Plaintiff's case, numbered 04-K-10-000228. *Id.* ¶¶ 16, 23. Plaintiff had pleaded guilty in 2011 and served a prison sentence in relation to that case. *Id.*[2]

- On February 19, 2017, Defendants subjected Plaintiff to an "unnecessarily rough stop and arrest[,]" purportedly because of several outstanding warrants related to possession charges. *Id.* ¶¶ 16, 24.[3]

- Defendants arrested Plaintiff as a result of the February 19, 2017 stop for possession of cocaine, "even though the government knew at least by May 2, 2017 that the purported substance involved did not contain any controlled dangerous substances[.]" *Id.*[4]

- The State's Attorney's Office removed Plaintiff's case, numbered 6O00060962, from the stet docket and requested the issuance of a bench warrant[.] *Id.* ¶¶ 16, 25.

- On April 17, 2017, Defendant Harms detained Plaintiff and, along with other John Doe officer and deputy defendants, unlawfully seized at least $2000 and three cell

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 6, and are presumed to be true.

[2] Plaintiff does not specify which of the Defendants were involved in this event.

[3] Plaintiff does not specify which of the Defendants were involved in this event.

[4] Plaintiff does not specify which of the Defendants were involved in this event.

phones during a warrantless search.[5] *Id.* ¶¶ 16, 17. However, Defendants later claimed that only $1260 was seized, even though Defendants never gave Plaintiff or anyone else any receipt or other documentation for the seizure. *Id.* ¶¶ 16, 18. Personnel of the Calvert County Sheriff's Department admitted that they had the property but did not return the property at Plaintiff's request. *Id.* ¶ 18.[6]

- On September 12, 2017, Defendant Harms and other John Doe officer and deputy defendants illegally detained Plaintiff's person and then made contradictory statements regarding the reason for Plaintiff's arrest, including that they had articulable suspicion or, in the alternative, that there was a death threat against Plaintiff. *Id.* ¶¶ 16, 26.

- Defendants came to the homes of Plaintiff's friends and family to speak with Plaintiff despite Plaintiff and Plaintiff's counsel asking Defendants not to question Plaintiff without his attorney present. *Id.* ¶¶ 16, 26.[7]

- Calvert County attorneys and state attorneys, including State Defendants, retained Plaintiff's property seized on April 17, 2017 under the false pretense of the property being evidence of a crime, obtained a warrant without probable cause for at least one of the telephones seized, and did not follow proper procedure in returning the property to Plaintiff. *Id.* ¶¶ 16, 27. Specifically, on April 27, 2017, Defendant Martin told Plaintiff that the money and phones were being held as evidence in an ongoing investigation involving drug activity. *Id.* ¶ 19.

- On or about March 31, 2018, Defendant Kelly swore certain facts in a Statement of Probable Cause. *Id.* ¶ 28. On March 29, 2018, Judge Wells signed three separate search and seizure warrants based on Defendant Kelly's affidavits, including warrants for the search and seizure of Plaintiff's body, Plaintiff's Jeep, and a residence located at 12558 Santa Rosa Road, Lusby, Maryland. *Id.* These search warrants were issued in reference to a controlled dangerous substance ("CDS") investigation where Plaintiff was the target. *Id.*

- On March 30, 2018, Defendants made a traffic stop on Plaintiff's Jeep pursuant to the search and seizure warrants described above. *Id.* This stop was "conducted by DFC Holt[,]" who is not a named defendant. *Id.* During the traffic stop, John Doe officer and deputy defendants conducted a strip search of Plaintiff's body on a public street, despite the absence of a reason why this search could not have been conducted in

---

[5] The Amended Complaint provides multiple dates for this event. ECF No. 6 ¶ 17 ("April 15, 2017").

[6] Not included in Plaintiff's Complaint but documented in state court documents from the District Court of Maryland for Calvert County, Plaintiff previously filed a lawsuit related to this incident in December 2017. ECF No. 15-3. Plaintiff's complaint in that lawsuit includes the exact same allegations included in the instant Complaint. *Id.* The Honorable Kenneth A. Talley, after a bench trial, dismissed Plaintiff's state action in October 2018. ECF No. 15-4.

[7] Plaintiff does not specify which of the Defendants were involved in this event.

private. *Id.* Also during the traffic stop, John Doe officer and deputy defendants indicated they were going to plant a gun in Plaintiff's vehicle. *Id.*[8] One gram of marijuana was found during the strip search of Plaintiff. *Id.*

- Also, on March 30, 2018, members of the Calvert County Sheriff's Office executed a search of the residence located at 12558 Santa Rosa Rd., Lusby, Maryland. *Id.* ¶ 29. During the search, the officers found 6.3 grams of suspected cocaine, a black digital scale with suspected cocaine residue, loose currency, and multiple pieces of mail addressed to Plaintiff at a different address. *Id.*

- Based on evidence from the March 30, 2018 searches, Plaintiff was indicted and convicted for possession with intent to distribute CDS, possession of CDS, and possession of CDS paraphernalia. *Id.* The Maryland Court of Special Appeals, however, vacated this conviction. *Id.*[9]

Plaintiff alleges that these events demonstrate that the State of Maryland, Calvert County, the Calvert County's Sheriff's Department, and the Calvert State's Attorney's Office "have and or had . . . a policy and or custom of allowing and encouraging investigations, arrests, indictments and prosecutions that are not based on probable cause, that are based on false and misleading information, and of withholding exculpatory information." *Id.* ¶ 31.

### B.    Procedural Background

Plaintiff initiated this lawsuit on April 14, 2020, ECF No. 1, and filed his Amended Complaint on July 15, 2020, ECF No. 6. The Amended Complaint brings nine claims: False Arrest (Count 1); False Imprisonment (Count 2); Negligence (Count 3); Violations of Maryland Declaration of Rights/State Constitutional Claim (Count 4); Vicarious Liability (Count 5); Malicious Prosecution (Count 6); Violations of Federal Law – Constitutional Claim under 42

---

[8] Plaintiff, however, does not allege the John Doe officer and deputy defendants ever planted the gun.

[9] Plaintiff also alleges that during the trial it was revealed that Defendant Ridge withheld exculpatory evidence from the defense and violated the rule on witnesses by warning the officers who were involved in the discussion to plant the gun that they were about to be questioned regarding that issue. ECF No. 6 ¶ 29.

U.S.C. § 1983 (Count 7);[10] Violations of Federal Law – Discrimination based on Race in violation of the Equal Protection Clause of the United State Constitution (Count 8); and Violations of Federal Law – Discrimination based on Sex in violation of the Equal Protection Clause of the United States Constitution (Count 9). ECF No. 6 at 14–30. On July 23, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis*. ECF No. 9.

The Law Enforcement Defendants filed their Motion to Dismiss or for Summary Judgment ("Law Enforcement Defendants' Motion") on August 19, 2020. ECF No. 15. On September 24, 2020, Plaintiff filed a Motion to Enlarge Time to Respond to Defendant's Motion to Dismiss and for Summary Judgment, ECF No. 18, and then filed an additional Motion to Late File Response to Defense Motion to Dismiss or for Summary Judgment, the Time for Filing Having Expired, ECF No. 20, on October 2, 2020, attaching his proposed opposition to the latter motion, ECF No. 20-2. The Court granted both of Plaintiff's motions for extension of time on March 30, 2021 and permitted the Law Enforcement Defendants to file a reply within ten days. ECF No. 24. The Law Enforcement Defendants filed their reply the following day. ECF No. 25.

The State Defendants filed their Motion to Dismiss on October 19, 2020. ECF No. 22. Plaintiff responded on November 2, 2020, ECF No. 23, conceding that "claims against the State of Maryland should not be pursued in this forum based on Eleventh Amendment Immunity" and requesting that "this case as it pertains to the State Defendants be dismissed in Maryland Federal District Court pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), without prejudice." *Id.* at 1.[11] Thus, while the Court will now turn to the merits of the claims against the Law

---

[10] The Amended Complaint includes two counts labeled count 7—(1) Violations of Federal Law – Constitutional Claim, ECF No. 6 at 24; and (2) Violations of Federal Law - 42 U.S.C. § 1983, *id.* at 26—however, both counts include substantially similar allegations.

[11] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Enforcement Defendants, the State Defendants' Motion to Dismiss is granted by concession.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any

reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B.      Motion for Summary Judgment

If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving

party's case, the burden shifts to the nonmoving party to identify specific facts showing that

there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322–23. A material fact is one

that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto*

*Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)). A dispute of material fact is only "genuine" if "sufficient evidence favoring the

nonmoving party" exists for the trier of fact "to return a verdict for that party." *Anderson*, 477

U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact

through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769

F.2d 213, 214 (4th Cir. 1985) (citation omitted). When ruling on a motion for summary

judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted).

While the Court may rule on a motion for summary judgment prior to commencement of

discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir.

2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when

the nonmovant has not had the opportunity to discover information that is essential to his

opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal quotation marks and

citation omitted). To obtain Rule 56(d) relief, the non-moving party bears the burden of showing

how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive

summary judgment, or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz*

*Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (internal quotation marks and citation omitted).

### C.    Dismissal under 28 U.S.C. § 1915

Finally, the *in forma pauperis* statute authorizes district courts "at any time" to dismiss a

case where the Complaint fails to state a claim on which relief may be granted, or if the claim is

frivolous, malicious, or "seeks monetary relief against a defendant who is immune from" suit. 28 U.S.C. § 1915(e)(2)(B). *See also Jenkins v. Tillbrook*, No. PX-18-565, 2018 WL 1570259, at * 1 (D. Md. Mar. 30, 2018). Where the Court assesses whether a Complaint should be dismissed under § 1915(e)(2)(B), the standards are "the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003)).

## III.    DISCUSSION

Because the Court's jurisdiction over this action is based on federal question jurisdiction, 28 U.S.C. § 1331, the Court will first discuss whether Plaintiff's federal claims can withstand Law Enforcement Defendants' Motion. Finding that at least one of Plaintiff's federal claims survives, the Court will then turn to the viability of Plaintiff's state law claims.

### A.    Federal Claims

#### 1.    Violations of Federal Law – Constitutional Claim, 42 U.S.C. § 1983 (Count 7)

Plaintiff alleges in Count 7 that Defendants engaged in the illegal conduct mentioned in the Amended Complaint "to the injury of [Plaintiff] and deprived him of his then existing and clearly established rights, privileges and immunities secured to him by the United States Constitution, *including but not limited to* the Fourth, Fifth, and Sixth Amendments, and arising under the law and statutes of the United States." ECF No. 6 ¶ 87 (emphasis added); *see also id.* ¶ 96. Plaintiff then elaborates that "[a]ll defendants . . . have subjected [Plaintiff] to conduct consisting of unreasonable, unnecessary, and excessive force, deprivation of his due process rights, deprivation of his equal protection rights, police misconduct, false imprisonment, improper detention, improper investigation, suppression of evidence, failure to release and or end the prosecution of [Plaintiff] upon learning exculpatory information, publicly strip searching

[Plaintiff], [and] improper training and pro[cedures] and protocols[.]" *Id.* ¶ 88; *see also id.* ¶ 97. Finally, Plaintiff alleges that Defendants' conduct deprived him of his "rights, privileges and immunities secured to him by the United States Constitution[,]" including: "[f]reedom from illegal detention or imprisonment; freedom from the use of excessive or unreasonable force; freedom from physical abuse, coercion and intimidation; the right to due process; the right to life[;] the right to liberty; and freedom from unreasonable searches and seizures." *Id.* ¶¶ 91, 100.

Thus, in the space of one claim, Plaintiff presents numerous federal constitutional and statutory theories of liability but fails to allege what conduct forms the basis for which theory of liability and which defendants are responsible for that conduct. Such a claim fails to give Defendants fair notice of the grounds of Plaintiff's entitlement to relief, impeding Defendants' ability to frame responsive pleadings and prepare defenses. *See Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2) (requiring that a complaint contain "a short and plain statement of the claim"); Fed. R. Civ. P. 8(d)(1) (necessitating that each averment "be simple, concise, and direct."). Plaintiff has likewise burdened the Court with fishing through the Amended Complaint in order to reconcile Plaintiff's factual allegations with the various theories of liability he presents, a challenge exacerbated by Plaintiff's indiscriminate allegation of every cause of action against every Defendant. While a court should draw all reasonable inferences in favor of the plaintiff when considering a motion to dismiss, *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440, "[d]istrict judges are not mind readers. . . . [T]hey cannot be expected to construct full blown claims from sentence fragments, which is essentially what [Plaintiff] is seeking here." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Nevertheless, "[w]here the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court

from resolving that which the litigant himself has shown to be his real concern." *Id.* Here, from Plaintiff's other allegations and claims it seems reasonably clear that the actionable conduct at the base of Defendant's federal constitutional claims, to the extent those claims are brought against the Law Enforcement Defendants, is the September 2017 detention and the March 2018 public strip search.[12] *See* ECF No. 6 ¶ 88 ("All defendants acting under color of Law, have subjected [Plaintiff] to conduct consisting of . . . false imprisonment, improper detention, . . . [and] publicly strip searching [Plaintiff.]"). Plaintiff has sufficiently pleaded Fourth Amendment claims based on both these incidents.[13]

###           a.        September 2017 Detention

Even if a detention is brief, "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citation omitted). With respect to the September 2017 detention, Plaintiff has (1) sufficiently pleaded that he was detained, *see* ECF No. 6 ¶ 26 ("Calvert County Law enforcement then effected an illegal detention . . . when Calvert County Sheriff's Deputies, including Officer Harms and other unknown officers seized his person on or about September 12, 2017."), and (2) set forth sufficient factual content to support an inference that the detention was without any justification, *see id.* ("Calvert County Sheriff's Deputies subsequently made contradictory

---

[12] It is also likely that, in Count 7, Plaintiff wishes to seek redress for the unnecessarily rough stop and arrest in February 2017 and the April 2017 unwarranted search and seizure of his property. However, as discussed below, such claims are barred by the statute of limitations and res judicata, respectively. *See infra* §§ III.B.1.a, III.B.1.b; *see also Battle v. Ledford*, 912 F.3d 708, 713 (4th Cir. 2019) ("The Supreme Court has directed that we apply a state's 'statute of limitations governing general personal injury actions' when considering § 1983 claims." (quoting *Owens v. Okure*, 488 U.S. 235, 251 (1989))).

[13] While there may be other federal constitutional claims that Plaintiff intended to allege, the Court declines to undertake the task of matching the various conduct alleged in the Amended Complaint with every federal constitutional claim that conduct could possibly support. As the Court has previously mentioned, a court is not required to "construct the plaintiff's legal arguments for him[,]" *Aurel*, 2015 WL 2450981, at *1, especially where, as here, the plaintiff is represented.

statements about the reason for their arrest of [Plaintiff, including stating] that they had articulable suspicion and did not need probable cause, even though they never provided articulable suspicion nor explained the subject matter of the articulable suspicion."); *see also infra* § III.B.1.c. Thus, Plaintiff has adequately pleaded a Fourth Amendment claim against Defendant Harms and the John Doe officer and deputy defendants based on their September 2017 detention.[14]

Law Enforcement Defendants argue that the Court should grant summary judgment in Defendant Harms' favor because of his uncontested affidavit stating that he "did not stop, detain, or arrest Plaintiff" on September 12, 2017, or a similar date. ECF No. 15-1 at 6, 16, 21. In Plaintiff's response he states that "Plaintiff will need to conduct discovery to determine the identity and roles of the officers involved in that incident." ECF No. 20-2 at 12.

As discussed above, *see supra* § II, Fed. R. Civ. P. 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano*, 743 F.3d at 931 (internal quotation marks and citation omitted). To obtain Rule 56(d) relief, the non-moving party must show how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter*, 792 F.3d at 411 (internal quotation marks and citation omitted). "Generally such an attempt is made through the filing of a Rule 56(d) affidavit that outlines the need for discovery and what additional facts litigants hope to uncover through

---

[14] Plaintiff's Fourth Amendment claim based on the September 2017 detention is dismissed as to the other Law Enforcement Defendants because, while Plaintiff specifically alleged the involvement of Defendant Harms and John Doe officer and deputy defendants in his September 2017 detention, Plaintiff has not alleged that any of the other Defendants were involved in the allegedly unjustified detention. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (holding that to be liable under § 1983 the defendants must have "acted personally in the deprivation of the plaintiff's rights" and thus dismissing the claim because plaintiff did not allege a "personal connection" between his constitutional rights violation and the defendant); *see also infra* § III.B.1.c.

discovery to properly defeat summary judgment." *Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015). Yet, where "'the nonmoving party's objections before the district court served as the functional equivalent,' a Rule 56(d) affidavit may not be necessary." *Id.* (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002)). Plaintiff's statement in his opposition that he needs "discovery to determine the identity and roles of the officers involved in that incident[,]" ECF No. 20-2 at 12, is the equivalent of a Rule 56(d) affidavit because he alleges the need for discovery and what additional facts Plaintiff hopes to uncover. Thus, as to Plaintiff's Fourth Amendment claim against Defendant Harms and John Doe officer and deputy defendants based on the September 2017 detention, summary judgment is inappropriate under Fed. R. Civ. P. 56(d). *See Pisano*, 743 F.3d at 931 ("A court should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant."). The Court denies Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment as to that claim.

**b.    March 2018 Public Strip Search**

With respect to the March 2018 public strip search, Plaintiff has pleaded that "[t]he officers conducted a strip search of [his] body on a public street, despite the fact that there was no exigency or other reason the search of [Plaintiff's] person could not have been done in a private location." ECF No. 6 ¶ 28. "[T]he Fourth Amendment protects the right of the people to be secure in their persons against unreasonable searches and seizures." *Amaechi v. West*, 237 F.3d 356, 360 (4th Cir. 2001) (internal punctuation and citation omitted). Thus, to be constitutional, a search must be reasonable. *Id.* A major factor in determining whether a strip search is reasonable under the circumstances is whether the strip search is conducted in private. *See Polk v. Montgomery Cty., Md.*, 782 F.2d 1196, 1201–02 (4th Cir. 1986); *see also U.S. v.*

*Dorlouis*, 107 F.3d 248, 256 (4th Cir. 1997) (discussing the fact that the strip search did not occur on the street subject to public viewing as a key factor in finding that the search was constitutional). When a strip search is conducted in public without any exigent circumstances, the Fourth Circuit has held those searches to be unreasonable and thus unconstitutional under the Fourth Amendment. *See Amaechi*, 237 F.3d at 362 (finding a strip search was in violation of the Fourth Amendment where the strip was conducted on the street in front of the plaintiff's house and where (1) the plaintiff was not a perceived threat to the officers' safety at the time of the search, (2) there was no security justification, and (3) there was no possibility that the plaintiff would attempt to destroy or conceal evidence). Plaintiff has plausibly alleged the March 2018 strip search was just such a search—the strip search was conducted in public without any justification for why the search had to be conducted immediately and in public. *See* ECF No. 6 ¶ 28. Therefore, the Court finds Plaintiff has adequately alleged a Fourth Amendment claim based on the March 2018 strip search. However, this claim is only adequately alleged as to the John Doe officer and deputy defendants since Plaintiff has failed to allege the involvement of any other named Law Enforcement Defendant. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (holding that a defendant is only liable under § 1983 when defendant "acted personally in the deprivation of the plaintiff's rights" and thus dismissing the claim because plaintiff did not allege the required "personal connection" between his constitutional rights violation and the defendant). The Court thus denies Law Enforcement Defendants' Motion with respect to Plaintiff's Fourth Amendment claim against John Doe officer and deputy defendants based on the March 2018 strip search.

> **2. Violations of Federal Law – Discrimination based on Race (Count 8) and Sex (Count 9) in violation of the Equal Protection Clause of the United States Constitution**

Plaintiff's remaining two federal claims are discrimination claims under the Equal

Protection Clause of the United States Constitution; neither of these claims is sufficiently pleaded under *Twombly*.

"To succeed on an equal protection claim, [Plaintiff] must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks and citations omitted). In an attempt to satisfy these elements, Plaintiff's allegations in Counts 8 and 9 consist of the repeated refrain:

> Defendants discriminated against Plaintiff by means of the actions described above based on [either his race or sex] as an African American Black man, and subjected him to disparate, negative, injurious and harassing treatment. [Citizens/Arrestees/People who were prosecuted in Calvert County] who were not [Black African Americans/African American men/African American Black men] were not treated this way.

ECF No. 6 ¶¶ 105–107, 111–113. These allegations, however, are the epitome of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which do not satisfy the pleading requirements of *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, Plaintiff's equal protection claims cannot survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, and Law Enforcement Defendants' Motion is granted as to Counts 8 and 9. *Id.*; *see also United Black Firefighters of Norfolk*, 604 F.2d at 847 (stating that a court, at the motion to dismiss stage, need not accept conclusory factual allegations devoid of any reference to actual events).

### B. State Claims

#### 1. False Arrest (Count 1) and False Imprisonment (Count 2)

Under Maryland common law, false arrest and false imprisonment share the same elements. *Dett v. Maryland*, 869 A.2d 420, 427 (Md. Ct. Spec. App. 2005). "The elements are: 1) the deprivation of the liberty of another; 2) without [his] consent; and 3) without legal

justification." *Id.* (internal quotation marks and citations omitted) (alteration in original); *see also Pegues v. Wal-Mart Stores, Inc.*, 63 F. Supp. 3d 539, 542 (D. Md. 2014). The essence of these two torts is "an unlawful detention." *Dett*, 869 A.2d at 427.

Plaintiff's Amended Complaint asserts that (1) Defendants' conduct deprived Plaintiff of his individual freedom of movement and of his personal liberty, ECF No. 6 ¶¶ 41, 46; (2) "[a]t no time did [Plaintiff] consent to the arrest or his numerous continued unjust detentions[,]" *id.* ¶¶ 42, 50; and (3) Plaintiff's "harassment, detention, unjustified arrest and removal of his property lacked any legal justification[,]" *id.* ¶¶ 43, 51. The Amended Complaint fails, however, to specify which of the three detentions included in the fact section constitute false imprisonment or arrest under Maryland law. Consequently, the Court briefly addresses each alleged detention: (1) the "unnecessarily rough stop and arrest" in February 2017, *id.* ¶¶ 16, 24; (2) Defendant Harms' and John Doe officer and deputy defendants' detention of Plaintiff in April 2017, *id.* ¶¶ 16, 17; and (3) Defendant Harms' and John Doe officer and deputy defendants' "illegal detention" of Plaintiff in September 2017, *id.* ¶¶ 16, 26.[15]

### a.    February 2017 Detention

First, the stop and arrest in February 2017 cannot be the basis of Plaintiffs' false arrest and false imprisonment claims because such claims would be barred by the statute of limitations. The statute of limitations is an affirmative defense to be raised in the pleadings "and is not usually an appropriate ground for dismissal." *Gray v. Metts*, 203 F. Supp. 2d 426, 428 (D. Md. 2002). However, dismissal under Fed. R. Civ. P. 12(b)(6) on statute of limitations grounds is

---

[15] Plaintiff also alleges in the Amended Complaint that he was the subject of a traffic stop in March 2018, during which he was searched. ECF No. 6 ¶ 28. However, the Court does not consider the March 2018 detention as a possible basis for Plaintiff's false arrest and false imprisonment claims because Plaintiff alleges that this stop was pursuant to a warrant and includes no allegations that the warrant was not legally justified. *Id.*

nonetheless appropriate "when the face of the complaint clearly reveals the existence of a

meritorious affirmative defense." *Id.* (citation omitted); *Goodman v. Praxair, Inc.*, 494 F.3d 458,

464 (4th Cir. 2007) (stating that Rule 12(b)(6) dismissal on statute of limitations grounds may

occur in the "relatively rare circumstances" when "all facts necessary to the affirmative defense

clearly appear *on the face of the complaint*" (emphasis in original) (internal quotations and

punctuation omitted)). Such is the case here.

Under Maryland law, "[a] civil action at law shall be filed within three years from the

date it accrues unless another provision of the Code provides a different period of time within

which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Since this

action was originally filed on April 14, 2020, an unjustified detention that occurred before April

14, 2017 cannot support Plaintiff's false imprisonment and false arrest claims.[16] Thus, the

February 2017 detention cannot support Plaintiff's claims, and the Court grants Law

Enforcement Defendants' Motion to Dismiss or for Summary Judgment with regard to Plaintiff's

false arrest and false imprisonment claims to the extent they are based on the February 2017

detention.

### b.      April 2017 Detention

Second, as to Plaintiff's April 2017 detention, Plaintiff alleges that Defendant Harms

detained Plaintiff in April 2017 and that, during that detention, the John Doe officer and deputy

defendants conducted a warrantless search and took some of Plaintiff's property, including cash

and cell phones, without providing Plaintiff a receipt for the seizure. ECF No. 6 ¶¶ 17, 18.

---

[16] Plaintiff also makes a vague allegation that he was arrested for possession of cocaine as a result of the February 19, 2017 stop "even though the government knew at least by May 2, 2017 that the purported substance involved did not contain any controlled dangerous substance[.]" ECF No. 6 ¶¶ 16, 24. However, the Court assumes that Plaintiff was not detained as a consequence of the February 19, 2017 stop past May 2, 2017 since Plaintiff alleges he was again stopped and searched in April 2017.

Plaintiff goes on to allege that Defendant Harms did not place Plaintiff under arrest nor charge him with any drug activity. *Id.* ¶ 18. However, other than the conclusory allegation stating—without specifying to which detention he is referring—that Plaintiff's "harassment, detention, unjustified arrest and removal of his property lacked any legal justification[,]" *id.* ¶ 43, Plaintiff's Amended Complaint does not allege that the April 2017 detention was not legally justified, nor does it allege any facts that allow the Court to infer that was case. Rather, the focus of Plaintiff's complaints regarding the April 2017 detention was the unwarranted search and the undocumented seizure of Plaintiff's property. *Id.* ¶¶ 16–18. Thus, to the extent Plaintiff's false arrest and false imprisonment claims are based on Plaintiff's April 2017 detention, those claims are insufficiently pleaded under *Twombly* and *Iqbal*, and the Court grants Law Enforcement Defendants' Motion with regard to those claims. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)).

Even if Plaintiff had sufficiently pleaded a false arrest or false imprisonment claim based on his April 2017 detention, Plaintiff previously, in December 2017, filed a lawsuit in the District Court of Maryland for Calvert County related to this same incident, making exactly the same allegations with respect to Defendant Harms. ECF No. 15-3. A bench trial was held before the Honorable Kenneth A. Talley in October 2018, at the end of which Judge Talley directed a verdict in favor of Defendants. ECF No. 15-4. Therefore, Plaintiff's false arrest and false imprisonment claims are barred by res judicata.

Res judicata "bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been

raised in the previous litigation." *Anne Arundel Cty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005). Under Maryland law, the elements of res judicata are: "(1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits." *Id.*

The first element of res judicata is met. Defendant Evans, Sheriff for Calvert County, was a party to Plaintiff's original state court case. *See* ECF No. 15-3 at 2.[17] Defendant Evans is in privity with Defendant Harms and all John Doe officer and deputy defendants alleged to be involved in the April 2017 detention because: (1) as the Court of Appeals of Maryland has stated in another context, "a deputy sheriff functions as the alter ego of the sheriff," *Rucker v. Harford Cty.*, 558 A.2d 399, 402 (Md. 1989); and (2) Defendant Evans' purported liability in the previous state court litigation was predicated on the alleged unlawful acts of Defendant Harms and the John Doe officer and deputy defendants, ECF No. 15-3 at 2 ("On April 15, 2017, Mr. Collington was detained by Officer J. Harms, ID 3512, of the Calvert County Sheriff's Department. During this detention, Officer Harms (or other unknown deputy sheriffs) conducted a warrantless search[.]"). Thus, Defendant Evans had to represent the interests of, and defend the conduct of, the present Law Enforcement Defendants in order to present a defense in the prior litigation. *See Bank of N.Y. Mellon v. Georg*, 175 A.3d 720, 745 (Md. 2017) ("So, where persons, although not formal parties of record, have a direct interest in the suit, and . . . they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties.").

---

[17] The Court takes judicial notice of the content of State court records pursuant to Fed. R. Evid. 201(b)(2). *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

As to the second element of res judicata, the claim presented in the previous action must be identical to the claim presented in the current action. *Anne Arundel Cty. Bd. of Educ.*, 887 A.2d at 1037. Under Maryland's transactional approach to the second element, "if the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously." *Id.* ("All matter which were litigated or *could* have been litigated in the earlier case are conclusive in the subsequent proceeding." (emphasis in original) (internal quotation marks and citations omitted)).

Here, the second element of res judicata is met. The claims regarding the April 2017 detention in the instant action, including Plaintiff's claims of false arrest and false imprisonment, are based on the same set of facts as alleged in the state court action. In fact, Plaintiff's state court complaint includes the same factual allegations verbatim as Plaintiff includes in Paragraphs 17, 18, 19, and 21 of the Amended Complaint in the instant case. *Compare* ECF No. 15-3 at 3 *with* ECF No. 6 ¶¶ 17–19, 21.

Finally, as to the third element of res judicata, it is undisputed that there has been a final judgment on the merits. ECF 15-4 at 2 (Judgment entered for Defendants in state court action). Thus, the April 2017 detention cannot support Plaintiff's claims for false arrest and false imprisonment on res judicata grounds as well.

### c.    September 2017 Detention

The final detention upon which Plaintiff's false arrest and false imprisonment claims can be based is the September 2017 detention. Plaintiff alleges that on September 12, 2017, Law Enforcement Defendants "effected an illegal detention which amounted to an unlawful arrest" of Plaintiff when Defendant Harms and other John Doe officer and deputy defendants seized Plaintiff's person. ECF No. 6 ¶ 26. Plaintiff further alleges that "[i]n conjunction with the

20

September 12, 2017 incident, Calvert County Sheriff's Deputies subsequently made contradictory statements about the reason for their arrest of [Plaintiff]." *Id.* For example, according to Plaintiff, the deputies told him "they had articulable suspicion and did not need probable cause, even though they never provided the articulable suspicion nor explained the subject matter of the articulable suspicion." *Id.* In the alternative, the deputies "stated that they had a credible 'death threat' against [Plaintiff,]" but again did not explain the basis for that claim. *Id.* Additionally, as to this alternative cause for Plaintiff's detention, other deputies later stated that "they had no information as to any 'death threat' against [Plaintiff] and did not know why any other Deputy would state that one existed." *Id.*

Plaintiff's allegations regarding the September 2017 detention are sufficient to support a false arrest or false imprisonment claim against at least some of the Law Enforcement Defendants. Plaintiff has adequately pleaded that he was deprived of his liberty without his consent, thus satisfying the first two elements of a false imprisonment or false arrest claim under Maryland law. *See Dett*, 869 A.2d at 427. The Court can also make the reasonable inference, based on Plaintiff's allegations regarding the contradictory explanations the deputies gave for his September 2017 detention, that this deprivation lacked legal justification, satisfying the third element of a false arrest or false imprisonment claim. *See id.* Therefore, Plaintiff has pleaded all three elements of a false arrest or false imprisonment claim such that those claims can withstand a motion to dismiss.

Plaintiff's false arrest and false imprisonment claims, however, cannot survive as to all Defendants against whom those claims are alleged. While Plaintiff's Amended Complaint lists all Defendants in this case and states that they "did intentionally and unlawfully engage in a pattern of harassment and illegal detention and arrest and removal of property from Plaintiff[,]"

this conclusory allegation is insufficient to allege liability against all Law Enforcement Defendants. ECF No. 6 ¶ 39; *see also id.* ¶ 46. Instead Plaintiff's allegation that all fourteen Defendants—plus, a previously unmentioned party, Defendant Neubauer—committed this tort is, as Law Enforcement Defendants argue, improper group pleading. This type of pleading—where the Plaintiff lists "everyone that *could have been* involved"—at best, "amounts to a conclusory allegation that . . . [each Defendant was] somehow responsible for the wrongful conduct" and, at worst, "must be read as an allegation that *one of the [fifteen defendants]* did [the] act, an assertion that amounts to speculation and which is deficient under *Twombly*." *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008) (emphasis in original) (dismissing the plaintiff's complaint as to two individual defendants); *Thomas v. Maryland*, No. GJH-17-1739, 2017 WL 6547733, at *6 (D. Md. Dec. 20, 2017) ("Plaintiffs seemingly list every possible officer they can find, potentially including officers that were not present on the scene or omitting others that were. Such an approach falls short of that which is required to overcome a motion to dismiss."). "The Court cannot permit Plaintiffs to go forward on a claim based on factual allegations in which basic questions of who did what are completely unclear." *Proctor*, 579 F. Supp. 2d at 744. Plaintiff has specifically alleged the involvement of Defendant Harms and the John Doe officer and deputy defendants in his September 2017 detention and, consequently, the false arrest and false imprisonment claims will survive a motion to dismiss as to those parties; however, the Court dismisses Plaintiff's false arrest and false imprisonment claims as to all other Law Enforcement Defendants.[18]

Similar to their argument with respect to Plaintiff's Fourth Amendment claim against

---

[18] The Court also dismisses Plaintiff's claims as to Defendant Neubauer, to the extent that Plaintiff attempted to make Defendant Neuberger a named defendant.

Defendant Harms based on the September 2017 detention, Law Enforcement Defendants argue that, to the extent that Plaintiff's false arrest and false imprisonment claims survive a motion to dismiss as against Defendant Harms, the Court should grant summary judgment in Defendant Harms' favor because of his uncontested affidavit stating that he did not stop, detain, or arrest Plaintiff on September 12, 2017, or a similar date. ECF No. 15-1 at 16. Plaintiff again states that "Plaintiff will need to conduct discovery to determine the identity and roles of the officers involved in that incident." ECF No. 20-2 at 12. Consequently, the Court declines to grant summary judgment in Defendant Harms' favor for the same reasons discussed above with respect to Plaintiff's Fourth Amendment claim against Defendant Harms based on the September 2017 detention. *See supra* § III.A.1.a.

The Court denies Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment with respect to Plaintiff's false arrest and false imprisonment claims to the extent those claims are based on the September 2017 detention and are asserted against Defendant Harms and John Doe officers and deputy defendants.

## 2. Negligence (Count 3)

To establish a negligence claim under Maryland law, "a plaintiff must allege facts showing that: (1) the defendant owes the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff sustained an injury or loss; and (4) the defendant's breach of the duty was the proximate cause of the plaintiff's injury." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 451 (Md. 2017) (citation omitted); *see also Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999) ("Facts must be pleaded with some specificity to demonstrate that the elements which are required to sustain the cause of action exist."). "The existence of all of the elements including a legally recognized duty owed by this defendant to

23

this plaintiff or to a class of persons of which this plaintiff is a member is vital to sustaining a cause of action in negligence." *Valentine*, 727 A.2d at 949 (citation omitted). "Maryland defines 'duty' as 'an obligation to which the law will give effect and recognition to conform to a particular standard of conduct toward another.'" *Balfour Beatty Infrastructure, Inc.*, 155 A.3d at 451 (quoting *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 758 (Md. 1986)).

Plaintiff alleges that "[t]he Defendants . . . had a duty to use reasonable care not to harm [Plaintiff] or to violate his rights[,]" ECF No. 6 ¶ 53, and that they breached this duty by:

a. Falsely arresting/detaining [Plaintiff];

b. Improperly investigating the incident in question and refusing to provide him with information and protection at a time when they alleged that his life was in danger due to his status as a witness to a crime;

c. Improperly accusing [Plaintiff] of crimes;

d. Fail[ing] to properly train;

e. Fail[ing] to properly evaluate before promoting or hiring; [and]

f. Strip Searching [Plaintiff] on a Public Street[.]

*Id.* ¶ 54. Law Enforcement Defendants argue, however, that Plaintiff "fails to identify any particular negligent act by any particular Defendant" and that, even had Plaintiff sufficiently alleged negligence, the Sheriff and his deputies are immune from liability under the Maryland Tort Claims Act ("MTCA"). ECF No. 15-1 at 16–17.

First, for the reasons discussed above, *see supra* § III.B.1.c, Plaintiff's allegations that every Law Enforcement Defendant is liable without specifying how the individual Defendants were involved does not satisfy the pleading requirements of *Twombly*. *See Proctor*, 579 F. Supp. 2d at 744 ("The Court cannot permit Plaintiffs to go forward on a claim based on factual allegations in which basic questions of who did what are completely unclear."). Thus, Plaintiff's negligence claim is dismissed against all Law Enforcement Defendants other than Defendants

24

Harms and the John Doe officer and deputy defendants, because the Amended Complaint is devoid of reference to conduct by those other Law Enforcement Defendants.[19]

Second, as Law Enforcement Defendants argue, pursuant to the MTCA, "State personnel," which includes "a sheriff or deputy sheriff of a county[,]" Md. Code Ann., State Gov't § 12-101(a)(6), "are immune from . . . liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence[.]" Md. Code Ann., Cts. & Jud. Proc. § 5-522. In other words, county sheriffs and deputy sheriffs are not liable for ordinary negligence. Plaintiff argues, however, that despite Count 3 being labeled negligence, "the Amended Complaint alleges facts sufficient to establish gross negligence[.]" ECF No. 20-2 at 13. Under Maryland law, gross negligence is something more than simple negligence; rather, it is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper v. Rodriguez*, 118 A.3d 829, 845–46 (Md. 2015) (citation omitted). Further, "a wrongdoer is guilty of gross negligence . . . only when he . . . inflicts injury intentionally or is so utterly indifferent to the rights of others that he . . . acts as if such rights did not exist." *Id.* (citation omitted).

To determine whether Plaintiff has pleaded a negligence claim that will survive a motion to dismiss, for each of Defendants' alleged breaches of duty, the Court analyzes whether Plaintiff has both alleged facts sufficient to support all four elements of a negligence claim as well as facts sufficient to establish gross negligence.

---

[19] The Amended Complaint does reference conduct by Defendant Kelly as well, but Plaintiff does not allege that Defendant Kelly was directly involved in any of the conduct that the Court ultimately finds to satisfy the elements of a negligence claim. *See infra* §§ III.B.2.a, III.B.2.f.

### a.    Falsely arresting/detaining Plaintiff

For the reasons discussed above, only Plaintiff's September 2017 detention can support Plaintiff's claims that there was a false arrest or detention. *See supra* § III.B.1. Thus, the Court will only consider the September 2017 arrest in relation to Plaintiff's allegation that Law Enforcement Defendants breached a duty of care by falsely arresting Plaintiff.

With respect to the September 2017 detention, Plaintiff has alleged sufficient facts to establish gross negligence at the motion to dismiss stage. Plaintiff claims that Defendant Harms and other John Doe officer and deputy defendants detained him without legal justification and, to cover their lack of cause, made contradictory statements regarding the justification for Plaintiff's arrest. ECF No. 6 ¶ 26. Moreover, one of those justifications was an alleged death threat, about which Defendants refused to provide further information. *Id.* These allegations plausibly support a claim that Law Enforcement Defendants intentionally failed to perform a duty—the duty to act consistently with Plaintiff's rights by not arresting or detaining him without cause, *see* U.S. Const. amend. IV—thus, inflicting injury intentionally or with utter indifference to Plaintiff's rights. *Cooper*, 118 A.3d at 845–46. As a result, Defendant Harms and John Doe officer and deputy defendants are not immune from liability under Md. Code Ann, Cts. & Jud. Proc. § 5-522(b) as to Plaintiff's negligence claim based on the September 2017 false arrest, and Plaintiff has adequately stated a negligence claim against them.[20] Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment is denied with respect to Plaintiff's negligence claim to the extent that claim is against Defendant Harms and John Doe officer and deputy defendants based on the unlawful detention of Plaintiff in September 2017.

---

[20] The Court also declines to grant summary judgment in Defendant Harms' favor for the same reasons discussed above. *See supra* §§ III.A.1.a; III.B.1.c.

> **b.**     **Improperly investigating the incident in question and refusing to provide Plaintiff with information and protection at a time when they alleged that his life was in danger due to his status as a witness to a crime**

Plaintiff next alleges that Law Enforcement Defendants breached a duty "to use reasonable care not to harm [Plaintiff] or violate his rights[,]" ECF No. 6 ¶ 53, by "[i]mproperly investigating the incident in question and refusing to provide [Plaintiff] with information and protection at a time when they alleged that his life was in danger due to his status as a witness to a crime[,]" *id.* ¶ 54.

As to the first half of this alleged breach—"improperly investigating the incident in question[,]" *id.*—it is unclear to what conduct Plaintiff is referring, and thus the Court finds that Plaintiff fails to state a claim of gross negligence, or even ordinary negligence, based on that conduct.

As to the second half of Plaintiff's alleged breach—"refusing to provide [Plaintiff] with information and protection at a time when they alleged that his life was in danger due to his status as a witness to a crime"—the Court can reasonably infer that Plaintiff is referring to conduct that occurred during and after the September 2017 detention. ECF No. 6 ¶ 54. Specifically, the Court infers that the phrase "refusing to provide Plaintiff with information and protection" refers to Plaintiff's allegation that Law Enforcement Defendants told Plaintiff "that they had a credible 'death threat' against [Plaintiff], but never stated the basis or circumstances of the threat nor provided information as to its source[,]" other times told him that "they had no information as to any 'death threat[,]'" and still other times "stated that they would not provide information or protection about the 'death threat' unless [Plaintiff] came in to give them information, but declined to accept a request for an appointment to do so." *Id.* ¶ 26. However, the connection between this conduct and the alleged "duty to use reasonable care not to harm

27

[Plaintiff] or to violate his rights" is unclear. *Id.* ¶ 53. Thus, Plaintiff has not sufficiently alleged it breached a duty owed to him. *See Aurel v. Miller*, No. ELH-15-1422, 2015 WL 2450981, at *1 (D. Md. May 21, 2015) (citing *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993)) (stating that a district is not required to "construct the plaintiff's legal arguments for him"); *see also Valentine*, 727 A.2d at 949 ("The existence of all of the elements including a legally recognized duty owed by this defendant to this plaintiff or to a class of persons of which this plaintiff is a member is vital to sustaining a cause of action in negligence."). Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment is granted with respect to Plaintiff's negligence claim to the extent that claim is based on the conduct described in this subsection.

### c.      Improperly accusing Plaintiff of crimes

Plaintiff alleges that Defendants have breached a "duty to use reasonable care not to harm [Plaintiff] or to violate his rights[,]" ECF No. 6 ¶ 53, by "improperly accusing [Plaintiff] of crimes[,]" *id.* ¶ 54. The Court is unable to deduce what conduct this allegation refers to—or even whether it refers to conduct by Law Enforcement Defendants rather than by State Defendants, who now have been dismissed from this case—and thus finds Plaintiff has failed to state a negligence claim based on accusing Plaintiff of crimes. *See* Fed. R. Civ. P. 8(a). Moreover, even if this factually unsupported allegation was sufficient to state a negligence claim, Plaintiff certainly has not presented facts sufficient to establish gross negligence. Therefore, the Court dismisses the claim on immunity grounds under Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) as well. The Court grants Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment with respect to Plaintiff's negligence claim to the extent it is based on the Law Enforcement Defendants improperly accusing Plaintiff of crimes.

### d.     Failure to properly train

Plaintiff's allegation that Defendants are liable for the tort of negligence due to a "failure to properly train[,]" ECF No. 6 ¶ 54, does not satisfy the pleading requirements outlined in *Twombly* and *Iqbal* because the only factual allegation supporting Plaintiff's negligent failure to train claim is the conclusory statement that "the State of Maryland, Calvert County, the Calvert County Sheriff's Department, the Calvert State's Attorney and the Calvert State's Attorney's Office failed to properly train the police officers and prosecutors involved in this investigation, arrest, indictment and prosecution." ECF No. 6 ¶ 33. This singular factual allegation provides no information regarding what training Defendants allegedly failed to provide and what problematic conduct resulted from the deficiency of training. Thus, the Court grants, in part, Law Enforcement Defendants' Motion and dismisses Plaintiff's negligence claim to the extent it relies on the allegation that Defendants' failed to properly train the police officers and prosecutors involved in the conduct underlying this case.

Moreover, all of the parties that allegedly failed to train the police officers and prosecutors involved in the conduct underlying this case have either already been dismissed from this action or cannot be held liable in federal court for an alleged failure to train. First, the State of Maryland, the Calvert State's Attorney, and the Calvert State's Attorney's Office—to the extent the State's Attorney's Office was a separate party—have now been dismissed from this action, leaving only allegations against Calvert County and the Calvert County Sheriff's Department. Second, "as a matter of Maryland law, the Sheriff and Deputy Sheriffs of [Calvert] County are officials and/or employees of the State of Maryland rather than of [Calvert] County." *Rucker*, 558 A.2d at 402 ("The role of a sheriff as a State constitutional officer whose duties are subject to control by the General Assembly leads us to the conclusion that sheriffs are State

29

rather than local government employees. Because a deputy sheriff functions as the alter ego of the sheriff, and exercises the same authority, we reach the same conclusion with respect to deputy sheriffs."). Calvert County cannot be held liable for a failure to train state employees. Finally, because Calvert County Sheriff's Department—to the extent it is a named defendant in this case—is an agency of the State of Maryland, it, like the State of Maryland, is protected by sovereign immunity under the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Thus, Plaintiff's negligent failure to train claim is dismissed on this ground as well. !

### e.    Failure to properly evaluate before promoting or hiring

Plaintiff's claim that Defendants breached a duty to Plaintiff by failing to properly evaluate their subordinates before promoting or hiring them has even less factual support than Plaintiff's negligent failure to train claim. The only other references to hiring in the Amended Complaint are Plaintiff's allegations that the Calvert County Sheriff's Department and the Office of the State's Attorney for Calvert County are responsible for establishing their respective policies "regarding the screening, hiring, training, monitoring, and supervision of all" their respective subordinates. ECF No. 6 ¶¶ 3, 6. The Amended Complaint provides no information regarding which subordinates Plaintiff thinks were improperly hired or promoted or how the alleged failure to evaluate harmed Plaintiff. These barebone allegations do not meet Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief[.]'" *Twombly*, 550 U.S. at 555 (alteration in original). Moreover, the Office of the State's Attorney for Calvert County is dismissed from this action by concession, to the extent it ever was a named Defendant, and the Calvert County Sheriff's Department is immune from tort liability in federal court under the Eleventh Amendment. *See supra* § III.B.2.d. The Court grants, in part, Law Enforcement

Defendants' Motion and dismisses Plaintiff's negligence claim to the extent it is based on a failure to evaluate properly before hiring or promoting.

### f.        Strip searching Plaintiff on a public street

Plaintiff alleges that Defendants breached a duty to Plaintiff by strip searching Plaintiff on a public street resulting in damages to Plaintiff. ECF No. 6 ¶ 54. This negligence claim is supported by Plaintiff's allegation, in the Amended Complaint, that on March 30, 2018, DFC Holt conducted a traffic stop on Plaintiff's 2017 Jeep Renegade "pursuant to a search and seizure warrant for the body of [Plaintiff] and the . . . vehicle" and, during that search and seizure, "[t]he officers conducted a strip search of [Plaintiff's] body on a public street, despite the fact that there was no exigency or other reason the search of [Plaintiff's] person could not have been done in a private location." ECF No. 6 ¶ 28.

The Court finds Plaintiff's allegations regarding being strip searched on a public street are sufficient to establish gross negligence. As alleged, conducting a strip search on a public street with no apparent reason why the search could not have been done in private could be considered an "intentional failure to perform a manifest duty"—*i.e.*, Defendant's duty to not violate Plaintiff's right to be free from unreasonable searches, U.S. Const. amend. IV—"in reckless disregard of the consequences[.]" *Cooper*, 118 A.3 at 845–46; *see also Paulino v. State*, 924 A.2d 308, 319 (Md. 2007) (holding that a strip search conducted in a well-lit public car wash in front of members of the public in the absence of exigent circumstances was an unreasonable search in violation of the Fourth Amendment). Thus, Plaintiff's negligence claim, to the extent that it is based on the March 2018 strip search, survives Law Enforcement's Motion, but only as to the John Doe officer and deputy defendants since Plaintiff has not alleged any of the named defendants participated in the strip search.

### 3.   Violations of Maryland Declaration of Rights/State Constitutional Claim (Count 4)

Similar to Plaintiff's federal constitutional claims in Count 7, *see supra* § III.A.1,

Plaintiff's state constitutional claims in Count 4 are not pleaded in a way that adequately gives

notice to Defendants of the grounds of Plaintiff's entitlement to relief, impeding Defendants

ability to frame responsive pleadings and prepare defenses. *See, e.g.*, ECF No. 6 ¶ 58 (stating that

Defendants engaged in the illegal conduct mentioned in the Amended Complaint "to the injury

of [Plaintiff] and deprived him of his then existing and clearly established rights, privilege and

immunities secured to him by Declaration of Rights of the Constitution of the State of Maryland,

*including but not limited* to Articles 2, 19, 24, and 26, and arising under the laws and statutes of

the State of Maryland." (emphasis added)).[21]   Nevertheless, considering Plaintiff's other

allegations and claims, it is reasonably clear that the Law Enforcement Defendants' conduct that

Plaintiff is concerned about is the September 12, 2017 illegal detention of Plaintiff.[22]   It is also

reasonably clear that the relevant constitutional provision at issue is Article 26 of the Maryland

Declaration of Rights, which is *in pari materia* with the Fourth Amendment of the United States

Constitution. *See Gadson v. State*, 668 A.2d 22, 26, 26 n.3 (Md. 1995). Thus, for the reasons

discussed with respect to Plaintiff's Fourth Amendment claim based on the September 2017

detention, Plaintiff has alleged an Article 26 Declaration of Rights claim sufficient to survive a

---

[21] Plaintiff does not even narrow down which statutes could apply to the conduct alleged in the Amended Complaint, seemingly leaving all Maryland statutes as fair game to be considered a source of Defendants' liability.

[22] It is also likely that Plaintiff wishes to seek redress for the unnecessarily rough stop and arrest in February 2017 and the April 2017 unwarranted search and seizure of his property. However, as discussed above, such claims are barred by the statute of limitations and res judicata, respectively. *See supra* §§ III.B.1.a, III.B.1.b. In contrast, Plaintiff does not appear to attempt to bring a state constitutional claim for the March 2018 public strip search as it is not mentioned in the allegations found under Count 4 but is mentioned in the allegations regarding his federal constitutional claim in Count 7. *Compare* ECF No. 6 ¶¶ 59 *with id.* ¶ 88.

motion to dismiss against Defendant Harms and the John Doe officer and deputy defendants.[23]
*See supra* § III.A.1.a; *see also Gadson*, 668 A.2d at 26 (Md. 1995) (stating that Article 26 of the
Maryland Declaration of Rights "prohibits police from detaining an individual, even briefly,
absent some 'articulable reason' that the person seized is or has been engaged in criminal
activity"); ECF No. 6 ¶ 26 ("Calvert County Law enforcement then effected an illegal detention
. . . when Calvert County Sheriff's Deputies, including Officer Harms and other unknown
officers seized his person on or about September 12, 2017."); *id.* ("Calvert County Sheriff's
Deputies subsequently made contradictory statements about the reason for their arrest of
[Plaintiff, including stating] that they had articulable suspicion and did not need probable cause,
even though they never provided articulable suspicion nor explained the subject matter of the
articulable suspicion."). However, Plaintiff has not alleged that any of the other Law
Enforcement Defendants were involved in the September 2017 detention, and thus Plaintiff's
state constitutional claim is dismissed as to those Law Enforcement Defendants. *See supra*
§§ III.A.1.a, III.B.1.c.

    Like the Court observed with respect to Plaintiff's federal constitutional claims, there
may be other state constitutional claims that Plaintiff intended to allege. However, the Court
declines to undertake the task of identifying every semi-plausible state constitutional claim
Plaintiff could bring based on the facts he alleges in the Amended Complaint. *Aurel*, 2015 WL
2450981, at *1.

### 4.    Vicarious Liability (Count 5)

    Plaintiff labeled the fifth Count in the Amended Complaint, Vicarious Liability. The

---

[23] The Court declines to grant summary judgment in Defendant Harms' favor for the same reasons discussed above.
*See supra* § III.A.1.a.

Court grants Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment as to Count 5 for three reasons. First, to the extent that Plaintiff is attempting to bring a separate "vicarious liability" cause of action, such a cause of action does not exist. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 n.8 ("[T]here is no separate cause of action for respondent superior; rather, it is a doctrine that imputes liability for a cause of action to a principal."). Second, to the extent Plaintiff is asserting that the State of Maryland is vicariously liable for any of the claims presented in the Amended Complaint, the State of Maryland is immune from suit in federal court pursuant to the Eleventh Amendment, *see Pennhurst State Sch. & Hosp.*, 465 U.S. at 100; and, regardless, has been dismissed from this action. Third, and finally, to the extent Plaintiff is asserting that Calvert County is vicariously liable for any of the claims presented in the Amended Complaint, the individual Law Enforcement Defendants whose conduct is at issue are not agents of the county but rather are agents of the state. Md. Code Ann., State Gov't § 12-101(a)(6) (defining "State personnel" to include "a sheriff or deputy of a county"); *Willey v. Ward*, 197 F. Supp. 2d 384, 387–88 (D. Md. 2002) ("[A]s a matter of Maryland law, the Sheriff and Deputy Sheriffs of [a Maryland County] are officials and/or employees of the State of Maryland rather than of [the] County." (alterations in original) (quoting *Rucker*, 558 A.2d at 402)). Thus, the Court dismisses Count 5.

### 5.   Malicious Prosecution (Count 6)

Plaintiff brings a malicious prosecution claim in Count 6. Specifically, Plaintiff alleges that the Defendants "commenced several criminal proceedings to be instituted against Plaintiff . . . based upon information which the[y] knew or should have known was false. Further, the agents of the defendants came into possession of information which a reasonable person would have realized affected the decision to prosecute." ECF No. 6 ¶ 80. Then, in the

alternative, Plaintiff alleges that "Defendants properly instituted the action, but soon thereafter came into possession of information which demonstrated probable cause was lacking, yet the Defendants' agents did not take action to release [Plaintiff] from custody and/or have the charges removed." *Id.* ¶ 81. These allegations do not sufficiently set forth a claim for malicious prosecution such that it will survive a motion to dismiss.

> Under Maryland law:
>
> The necessary elements of a case for malicious prosecution of a criminal charge are . . . (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.

*Montgomery Ward v. Wilson*, 664 A.2d 916, 922 (Md. 1995) (internal quotation marks and citations omitted). Plaintiff's allegations cannot support all four of these elements for any of the criminal cases against Plaintiff referenced in the Amended Complaint.

In the Amended Complaint, Plaintiff references four criminal cases Defendants allegedly brought against him. The first case Plaintiff references is numbered 04-K-10-000228 and is a case in which Plaintiff pled guilty, and thus the case was not terminated in his favor and cannot support a malicious prosecution claim. ECF No. 6 ¶ 16. The second case Plaintiff references was brought as a result of the February 19, 2017 "unnecessarily rough stop and arrest." *Id.* As an initial matter, the involved parties in this second case do not include any of the Law Enforcement Defendants—the plaintiff is the State of Maryland, which is immune from suit in federal court and has been dismissed from this case, and the Complainant is a trooper with the Maryland State Police. ECF No. 15-6 at 2. Moreover, this second case, although resulting in the charge being *nolle prossed*, cannot form the basis of a malicious prosecution claim because such a claim would be barred by Maryland's three-year statute of limitations. The case was instituted in February 2017, *id.*, and the instant action was not filed until April 2020, ECF No. 1. Md. Code

Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). The third case Plaintiff references is numbered 6O00060962 and was placed on the stet docket. ECF No. 6 ¶ 16. Thus, this third case cannot support a malicious prosecution claim either because it did not terminate in Plaintiff's favor. *Hines v. French*, 852 A.2d 1047, 1057 (Md. Ct. Spec. App. 2004) ("A stet on a charge resulting from an agreement with the prosecutor is not a verdict in favor of appellant" for the purposes of "the second element for malicious prosecution"). The final case Plaintiff references in the Amended Complaint is the criminal case resulting from the warranted searches of a Calvert County residence, Plaintiff's car, and Plaintiff's person in March 2018. ECF No. 6 ¶ 29. In that case, Plaintiff was indicted and convicted. *Id.* However, the Maryland Court of Special Appeals vacated Plaintiff's conviction and the case was remanded for a new trial. ECF No. 15-10 at 18. To the Court's knowledge the new trial has not yet occurred. Thus, this fourth and final referenced case has not yet terminated for the purposes of a malicious prosecution claim. Moreover, Plaintiff's allegation that this fourth case resulted from Law Enforcement Defendants' discovery—during three warranted searches—of marijuana, 6.3 grams of suspected cocaine, and a digital scale with suspected cocaine residue, ECF No. 6 ¶¶ 28, 29, contradicts the plausibility of any allegation that the proceeding lacked probable cause, the third element of a malicious prosecution claim. Thus, the case resulting from the March 2018 searches cannot support a malicious prosecution claim.

Because all four criminal cases Plaintiff references in his Amended Complaint cannot support a malicious prosecution claim, the Court grants Law Enforcement Defendants Motion to Dismiss or for Summary Judgment as to Count 6.

***

For the reasons discussed above, only the following claims survive Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment, ECF No. 15, and State Defendants' Motion to Dismiss, ECF No 22: (1) the § 1983 Fourth Amendment claim (Count 7) against Defendant Harms and John Doe officer and deputy defendants based on the September 2017 detention; (2) the § 1983 Fourth Amendment claim (Count 7) against John Doe officer and deputy defendants based on the March 2018 strip search; (3) the false arrest and false imprisonment claims (Count 1 and 2) against Defendant Harms and John Doe officer and deputy defendants based on the September 2017 detention; (4) the negligence claim (Count 3) against Defendant Harms and John Doe officer and deputy defendants based on the September 2017 detention; (5) the negligence claim (Count 3) against John Doe officer and deputy defendants based on the March 2018 strip search; and (6) the Article 26 Declaration of Rights claim (Count 4) against Defendant Harms and John Doe officer and deputy defendants based on the September 2017 detention. The Court dismisses all other remaining claims.[24]

---

[24] The Court notes that Defendant Gains has not filed a motion to dismiss or any other responsive pleading in response to Plaintiff's Amended Complaint. However, Plaintiff does not include in his Amended Complaint any specific allegations stating that Defendant Gains was involved in any of the conduct that forms the basis for Plaintiff's numerous state and federal claims. Rather, Plaintiff's only allegations again Defendant Gains are the allegations where Plaintiff claims broadly that every Defendant was responsible for the conduct in question. *See, e.g.*, ECF No. 6 ¶ 39 ("Defendants State of Maryland, Calvert County, Calvert County Sheriff Mike Evans, Calvert County Sherriff's Deputies J. Harms ID 3512, *Officer Gains*, Deputy Buck, Deputy Kelly 5782, Deputy Wilson, Sgt. Borchesky, Detective Wells, Captain Ireland, and other known and unknown Officers of the Calvert County Sheriff's Department , Calvert County State's Attorney and Assistant Calvert County State's Attorney Lisa Ridge individually and/or through their agents, servants and /or employees as well as Defendant Neubauer, did intentionally and unlawfully engage in a pattern of harassment and illegal detention and arrest and removal of property from Plaintiff." (emphasis added)). The Court thus dismisses Plaintiff's claim against Defendant Gains pursuant to its authority under 28 U.S.C. § 1915(e)(2)(B). *See Thomas*, 2017 WL 6547733, at *6 ("Plaintiffs seemingly list every possible officer they can find, potentially including officers that were not present on the scene or omitting others that were. Such an approach falls short of that which is required to overcome a motion to dismiss."); *Vinnedge*, 550 F.2d at 928 (dismissing the plaintiff's claim because plaintiff did not allege the required "personal connection" between the plaintiff's constitutional rights violation and the defendant).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's claims against State Defendants' Motion to Dismiss is granted by concession and Law Enforcement Defendants' Motion to Dismiss or for Summary Judgment is granted, in part, and denied, in part. A separate Order shall issue.

Date: <u>July    26, 2021</u>                                              <u>    /s/                                    </u>
                                                                        GEORGE J. HAZEL
                                                                        United States District Judge